People of the State of Illinois, Plaintiff-Appellee, v. Joseph Accardi, Defendant-Appellant.

**Gen. No. 49,784.**

First District, First Division.

April 26, 1965.

Rehearing denied May 10, 1965.

Irwin D. Bloch, Jason Ernest Bellows and Sherman C. Magidson, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Joseph Accardi, was charged by information with unlawful use of a weapon in violation of our Criminal Code (Ill Rev Stats 1963, c 38, § 24–1 (a)(4)). A preliminary motion to suppress evidence was denied. Defendant waived a jury trial, and the cause was heard by the court. Upon a finding of guilty defendant was sentenced to imprisonment for one year at the Illinois State Farm at Vandalia.

The only issue before us is whether the trial court erred in denying the motion to suppress the evidence. Defendant's position is that he was illegally arrested, thus making the accompanying search and seizure of the weapon involved unreasonable, and therefore in violation of his constitutional rights. The State argues that the search was incident to a lawful arrest, since an offense was committed in the presence of the arresting officer. The narrow question presented for review is whether a lawful arrest was effected before the search, the determination of which requires a review of the evidence offered at the hearing on the motion.

The only witness called was the arresting officer, Walter Spasoff. He testified that on June 25, 1963, at about 9:00 a. m., he and his partner pulled their vehicle up alongside a parked car in which he observed defendant slumped over on the passenger side. Spasoff looked into the car in which defendant was seated, and noticed a bulge in defendant's left rear pocket, and above the bulge a black metallic object which appeared to him to be the butt of a revolver or pistol. The officer then circled to defendant's side of the car, removed him, and recovered the weapon, a loaded .25 caliber pistol.

On cross-examination Spasoff testified that he had no reason to believe defendant had committed a crime; that he did not, in fact, know the object to be a gun, but that at the time he reasonably believed the object he saw was the butt of a pistol or revolver. On inquiry by the court he also stated that he had been a policeman for eight years during which time he had occasion to confiscate weapons.

■■ The constitutional guarantees against search and seizure are not against all searches and seizures but only against those that are unreasonable and do not extend immunity from search upon lawful arrest.

People v. Tillman, 1 Ill2d 525, 116 NE2d 344 (1953); People v. West, 15 Ill2d 171, 154 NE2d 286 (1958). Where the arrest is justified the accompanying search is also justified (People v. Tabet, 402 Ill 93, 83 NE2d 329 (1948)) and conversely, it is beyond question that an arrest being unlawful, the ensuing search of the person and the seizure of evidence is likewise unlawful. People v. McGurn, 341 Ill 632, 173 NE 754 (1930).

██ ██ Section 107–2(c) of our Code of Criminal Procedure (Ill Rev Stats 1963, c 38, § 107–2(c)) provides:

A peace officer may arrest a person when:

. . . . . .

(c) He has reasonable grounds to believe that the person is committing or has committed an offense.

While a completely satisfactory and inflexible definition of what constitutes reasonable grounds is not possible to formulate, it is generally agreed that reasonable grounds or probable cause for arrest exists if the facts and circumstances known to the officer would warrant a prudent and cautious man in believing that the person arrested was guilty of an offense. People v. Jones, 31 Ill2d 42, 198 NE2d 821 (1964). Thus, it has been consistently held that an officer has the right to arrest without a warrant provided it is shown that a criminal offense has in fact been committed or attempted in his presence and he has reasonable grounds for believing that the person arrested committed it. People v. McIntyre, 15 Ill2d 350, 155 NE2d 45 (1958); People v. Stewart, 23 Ill2d 161, 177 NE2d 237 (1961); People v. McGowan, 415 Ill 375, 114 NE2d 407 (1953); People v. McDonald, 26 Ill2d 325, 186 NE2d 303 (1962); People v. Humphreys, 353 Ill 340, 187 NE 446 (1933). It is also firmly established that a search and seizure without a search warrant

367

may constitutionally be made as an incident to a lawful arrest for an offense committed in the presence of the arresting officer. People v. Davies, 354 Ill 168, 188 NE 337 (1933); People v. West, 15 Ill2d 171, 154 NE2d 286.

■ ■ It has been said that "the existence of reasonable cause which will justify an arrest without a warrant depends upon the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act . . . and that police officers 'often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.'" People v. Jones, 31 Ill2d 42, 47, 198 NE2d 821.

Whether the arrest in the instant case was lawful turns on the question whether a prudent and cautious man in the position of the officer would have reasonable grounds for believing that defendant had committed a crime in his presence. The applicable Criminal Code provision involved (Ill Rev Stats 1963, c 38, § 24-1(a)(4)) provides:

A person commits the offense of unlawful use of weapons when he knowingly:

. . . . . .

(4) Carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm; . . .

■ The gist of the crime under the statute is unlawful possession of a weapon. An offense was committed in the presence of the officer if he saw part of the revolver and the resulting arrest, search and seizure would be justified. If, on the other hand, he did not become aware of possession until after defendant's

seizure and examination both the arrest and ensuing search were unlawful.

■ The trial court, being the trier of fact, was in a position to determine the credibility and weight to be accorded the officer's testimony. No other witnesses were called, and we cannot say that the court's judgment, in denying the motion to suppress, rested on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence. The trial court accepted the officer's testimony that at the time here involved, he reasonably believed the object protruding from defendant's pocket was the butt of a revolver or pistol. Under the circumstances presented in the record we find no basis for substituting our judgment for that of the trial court.

Defendant argues that this case is controlled by the decision in People v. DeLuca, 343 Ill 269, 175 NE 370 (1931), but we cannot agree, as the narrow basis for the holding there is distinguishable from the case at bar. In DeLuca defendant was convicted of the unlawful possession of a hen pheasant at a time when the killing or possession of a hen pheasant was a criminal offense under the provisions of the game laws of this State. In pursuance of a telephone message that there was a violation of the law in question, officers charged with the enforcement of those laws searched a train on which the violators were supposedly riding. "These officers saw some feathers sticking out of defendant's pocket, searched his person for evidences of guilt and found four hen pheasants in his coat pocket."

The majority opinion was grounded on a finding that the search preceded the arrest, and that the arrest was improper because it was based upon the fruits of an unlawful search. The arrest was unlawful because, in the words of the court, ". . . if the hen pheasants had not been found by a search of the person of the

369

defendant he would not have been arrested. In such case there would have been no probable cause for his arrest. *There would have been nothing to indicate that the feathers were those of hen pheasants and not of cock pheasants or of some other birds."* (Emphasis ours.)

A similar case is that of Henry v. United States, 361 US 98, where the majority opinion of the Supreme Court concluded that there had been an illegal arrest and search. Federal agents who were investigating a theft from interstate shipment of whiskey, had received information from the employee of one Pierotti that the latter was in some way connected with the theft. The agents observed Pierotti and defendant entering residential premises and loading some cartons into a car. The agents stopped defendant, searched the car and discovered that the cartons contained radios, subsequently determined to have been stolen. The opinion concluded that the prosecution conceded the arrest took place when the agents ·stopped the car, and the court then held that the arrest had been made without probable cause and that the evidence disclosed by the subsequent search was inadmissible. The court, however, indicated that the result might have been different if the cartons the agents saw being loaded had had the appearance of whiskey cartons, or had the cartons placed in the car been taken from "a terminal from an interstate trucking platform," ·instead of a residence. The minority opinion indicated that the search and seizure occurred prior to the arrest and were justified by circumstances causing the agents to have a reasonable belief that a crime was being committed in their presence, and that the search and subsequent arrest were lawful. The dissent in DeLuca was similarly reasoned.

The rationale of the majority opinions in each of those cases was that the officers involved did not

have reason to believe *from what they could see* that an offense was being committed in their presence.

In the instant case the circumstances revealed by the officer's testimony places it within the rule of the "policy slip" (People v. McGowan, 415 Ill 375, 114 NE2d 407; People v. West, 15 Ill2d 171, 154 NE2d 286) and other cases applying the same principles (People v. Stewart, 23 Ill2d 161, 177 NE2d 237; People v. McDonald, 26 Ill2d 325, 186 NE2d 303) which have emanated from our Supreme Court.

In West and in McGowan the officers observed policy tickets before making arrests. In McDonald, officers watched defendant and noticed a gambling device protruding from a sack in the trunk of a car. A crime was also held to have been committed in the presence of the officers. In Stewart, officers watched defendant enter a car and then approached the vehicle. By flashlight they observed burglary tools in the back seat. Since the applicable statute was violated in the presence of the officers, an arrest and subsequent search was authorized. The instant case falls within the situations involved in the above cited cases.

For the reasons stated the trial court did not err in denying the motion to suppress evidence, and defendant's conviction is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.