**UNITED STATES of America ex rel. George A. BEASLEY, Petitioner,**

v.

**James GREER and Michael P. Lane, Respondents.**

No. 82 C 7447.

United States District Court, N.D. Illinois, E.D.

Aug. 11, 1983.

George A. Beasley, pro se.

Neil F. Hartigan, Atty. Gen., State of Ill. by Ellen M. Flaum, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM AND ORDER

BUA, District Judge.

This matter comes before this Court upon a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1976). Petitioner is seeking collateral review of his jury trial which resulted in a conviction for deviate sexual assault and unlawful restraint. The conviction was subsequently affirmed by the Illinois Appellate Court. *People v. Beasley,* 106 Ill.App.3d 1151, 64 Ill.Dec. 517, 439 N.E.2d 1325 (1st Dist.1982). After his petition for leave to appeal to the Illinois Supreme Court was denied, petitioner ("Beasley") brought this action. Before this Court is respondent's motion for summary judgment. For the reasons stated herein, the motion is granted.

The facts are as follows. On March 24, 1977, at approximately 9:15 p.m., Patricia Ward was accosted by a man in the parking

lot adjacent to her place of employment. After forcing his way into Mrs. Ward's car, the man stated that if she did not satisfactorily perform the sexual act of oral copulation upon him he would alternatively force her to have sexual intercourse with him. As the man began to drive her car, Mrs. Ward, in fear of her life, acceded to his demand. After five minutes had transpired, Mrs. Ward grabbed the steering wheel in an attempt to escape. The man was able to regain control of the car, but not before Mrs. Ward had jumped from the passenger seat to the ground. Upon returning home, Mrs. Ward's husband contacted the police, who, at approximately 9:30 p.m. on March 24, 1977, picked up Beasley near the scene of the crime and informed him that he was a suspect on a battery charge. Subsequently, he was transported to Mrs. Ward's home for identification purposes. After observing Beasley in the back seat of a squad car, Mrs. Ward concluded that he was the perpetrator of the crime. Mrs. Ward later identified petitioner a second time at the police station.

In support of his petition for habeas corpus relief Beasley contends: 1) the pretrial identifications were unnecessarily suggestive and should have been excluded along with Mrs. Ward's in-court identification of petitioner; 2) the prosecutor's closing argument was improper, prejudicial, and inflammatory, thereby depriving the petitioner of a fundamentally fair trial; 3) the evidence presented was insufficient to support a finding of guilt beyond a reasonable doubt; 4) the petitioner was not provided with effective assistance of counsel; and 5) the sentence imposed was excessive and was based on improper factors. The Court finds all of these contentions to be devoid of merit.

## I.

Petitioner first contends that because the pretrial identifications, taken together, were unnecessarily suggestive, and were lacking in a sufficient independent basis of reliability, those identifications, as well as Mrs. Ward's in-court identification of petitioner, should have been suppressed. Respondents assert first that there was nothing suggestive with regard to the initial pretrial identification. With regard to the second identification, they claim that, although it "might not have been 'essential,' it was not prejudicial in view of [its] strong, independent basis." Respondent's Opening Brief at 3. After careful consideration of both the record and the cited authorities, the Court agrees with respondents, and holds that all of the identification evidence was properly admitted.

■ Petitioner concedes that the initial showing, which took place approximately 15 minutes after the incident occurred, was proper.[1] Petitioner maintains, however, that the second show-up, which took place approximately 20 minutes after the first identification, was unnecessarily suggestive, because no justification existed for allowing the complainant to view the petitioner through a one-way mirror at the police station. It is the Court's conclusion that, although the second pretrial identification was not completely free of any suggestive aspects, it nonetheless was sufficiently reliable to support its admission at trial.

■ In *Manson v. Brathwaite,* 432 U.S. 98, 110, 97 S.Ct. 2243, 2250, 53 L.Ed.2d 140 (1977), the Supreme Court held that confrontation evidence which is inherently suggestive is nevertheless, admissible, if, despite the suggestive aspect, the out-of-court identification possesses certain features of reliability. Reliability is determined by those factors delineated in *Neil v. Biggers,*

1. As a general rule in Illinois, prompt show-ups at or near the scene of the crime are admissible when the circumstances require or justify an immediate identification of the suspect. *People v. McKinley,* 69 Ill.2d 145, 152–53, 13 Ill.Dec. 13, 370 N.E.2d 1040; *People v. Manion,* 67 Ill.2d 564, 569–70, 10 Ill.Dec. 547, 367 N.E.2d 1313. In the instant case, the initial identification was clearly justified. It occurred within minutes of the actual assault thereby insuring accuracy as opposed to a potential misidentification. Moreover, this procedure provides for a quick release of an innocent suspect, while enabling police promptly to resume the search for the offender who probably is still on foot in the area.

409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401.

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation."

Following a careful review of the record, it is clear that all of the required factors are present in this case. At trial, Mrs. Ward stated that she had several opportunities to view petitioner at the time of the crime. She was able to observe petitioner 1) in the bright fluorescent lights of the parking lot where she was accosted (Tr. 33), 2) in the light of the opened car door (Tr. 35), and, finally, 3) in the headlights of oncoming cars. In addition, while performing the sexual act she looked up at the petitioner several times. Her degree of attention, at the time of the crime, was evidenced by the fact that she was able to supply a description of petitioner which enabled the police to apprehend him only minutes after the assault actually occurred.

With respect to the accuracy of description, the arresting officer testified at trial that the description tendered by Mrs. Ward substantially matched the petitioner and served as the basis for the arrest. It is also evident from the record that Mrs. Ward displayed a high level of certainty with respect to her identification of petitioner during the confrontations. At the show-up which took place at the squad car, at the police station show-up, and at trial, Mrs. Ward positively identified petitioner. (Tr. 33, 48, 81). Finally, as only 30 to 40 minutes transpired between the crime and the subsequent confrontations, it is clear that the last *Biggers'* factor has been met.

In sum, since the initial identification was justified, and because the evidence wholly supports the conclusion that a strong independent basis existed for the in-court identification, the petitioner's contention regarding the pretrial identifications must fail.

## II.

Petitioner next contends that certain statements made by the prosecutor in closing argument were improper, prejudicial and inflammatory thus depriving him of his constitutional right to a fair trial. Respondents, on the other hand, maintain that the statements were either proper or not so prejudicial as to seriously affect the integrity of the trial. This Court agrees with respondent.

With respect to the alleged prejudicial effect of the statements, petitioner first complains of the prosecutor's reference to him as a liar. At trial, petitioner denied any involvement in the crimes against Mrs. Ward. As is evident from the record, however, the petitioner's trial testimony is inconsistent with prior statements he made at a preliminary hearing. (Tr. 248–263). Hence, the petitioner's credibility was clearly at issue. In light of petitioner's incongruous testimony, the prosecutor's comments amounted to nothing more than a message to the jury that it was their function to determine the credibility of the witnesses when presented with conflicting testimony. Such commentary presents no constitutional problem, and therefore does not constitute reversible error.

Petitioner presents a further list of the prosecutor's comments, which together are alleged to have rendered the trial fundamentally unfair. In particular, petitioner asserts that: 1) the prosecutor implied that petitioner could be acquitted only upon a finding that all prosecution witnesses were liars; 2) the prosecutor diminished the State's burden of proof by referring to it as "no big deal" and by stating that the State proves "millions" of cases beyond a reasonable doubt; 3) the prosecutor attacked defense counsel by suggesting to the jury that the defense avoided a bench trial and by arguing that defense counsel had failed to prove what it alleged; and 4) the prosecutor improperly argued matters not supported by the evidence.

Before these alleged errors could approach the level of a constitutional viola-

tion, petitioner would have to establish that the prosecutor's comments had a significant impact on the jury deliberations. *Donnelly v. DeChristoforo,* 416 U.S. 637, 646–648, 94 S.Ct. 1868, 1872–1874, 40 L.Ed.2d 431 (1974). Moreover, it would have to be shown that the comments were of such a nature that they "most probably infected the whole decision making process of the jury." *Bruce v. Estelle,* 483 F.2d 1031, 1040 (5th Cir. 1973). After carefully reviewing the allegations, however, it is clear that petitioner has failed to demonstrate that any of the prosecutor's remarks were so prejudicial or inflammatory as to deprive petitioner of a constitutionally fair trial. *United States ex rel. Clark v. Fike,* 538 F.2d 750 (7th Cir. 1976); *United States ex rel. Kirk v. Petrelli,* 492 F.2d 1245 (7th Cir.1974). Therefore, the above-listed claims concerning the allegedly prejudicial effect of the prosecutor's comments in closing argument must fail.

### III.

Petitioner's next contention is that he was not proved guilty beyond a reasonable doubt as required by the due process clause of the constitution. In support of this claim, petitioner substantially relies on Mrs. Ward's testimony concerning petitioner's appearance during the crime. Petitioner points out that Mrs. Ward made no mention of the fact that her assailant exuded a strong odor of alcohol. However, as was indicated by each police officer who testified at trial, petitioner clearly exuded such an odor at the time of his arrest. Because of this variance in testimony petitioner asserts that Ward's credibility as a witness was seriously diminished and that, as a result, her testimony at trial was insufficient to sustain a determination of guilt beyond a reasonable doubt. The State Appellate Court, however, concluded that an inconsistency of this nature was insufficient to raise a reasonable doubt of petitioner's guilt. This Court agrees.

In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court articulated the standard by which a Federal Court must assess the sufficiency of the evidence supporting a state court conviction in a habeas corpus proceeding. The Court must consider whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt, and the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime." 443 U.S. at 318–19, 99 S.Ct. at 2788–89 (emphasis in original). In the instant case, Mrs. Ward's testimony regarding the petitioner's physical description was substantially accurate. She positively identified petitioner on three occasions, and it was her sufficiently precise description of petitioner that enabled police officers to apprehend him near the scene of the crime. Thus, in this case, the evidence is clearly sufficient to meet the requirement set out in *Jackson.*

### IV.

Petitioner next contends that he was denied effective assistance of counsel at trial, and therefore, a new trial is warranted. It is important to note that with respect to a claim of this nature "petitioner bears a heavy burden of proof." *Saunders v. Eyman,* 600 F.2d 728 (9th Cir.1977). That burden is in fact heavier than that which petitioner would bear on direct appeal. *Garton v. Swenson,* 497 F.2d 1137 (8th Cir.1974). Petitioner's first contention is predicated on defense counsel's failure to make pretrial motions to quash the arrest for lack of probable cause, and to suppress the resulting identifications as illegal fruits thereof. Probable cause to arrest exists when the arresting officer has reasonable grounds for believing that the person to be arrested has committed or is in the process of committing a crime. *People v. Marino,* 44 Ill.2d 562, 256 N.E.2d 770 (1976); *People v. Bambulas,* 42 Ill.2d 419, 247 N.E.2d 873 (1969). After a careful review of the record, it is clear that probable cause to arrest existed at the time of the arrest. At trial, the arresting officer testified that he received a radio call from the station dis-

patcher to the effect that an abduction had been committed by a "white male, 20 to 25 years old, blonde hair and slender or skinny build." (Tr. 97). Within minutes of this call, petitioner, who substantially matched the description was arrested one block from where the crime took place. Based on the foregoing, it is clear that petitioner's claim regarding the existence of probable cause is simply untenable.

Petitioner's remaining contentions regarding the ineffective assistance of counsel claim include defense counsel's failure to object to: 1) the prosecutor's allegedly improper and prejudicial closing argument; 2) certain statements made by Mrs. Ward while testifying at trial, 3) the prosecutor's question: "Were you lying then or are you lying now?", and 4) the admission of prior inconsistent statements at trial. Following a careful review of the record, however, it is clear that none of these allegations amounted to substantial prejudice at trial. The standard by which to measure an ineffective assistance of counsel claim is whether the defendant received "legal assistance which meets the minimum standard of professional representation." *United States of America v. Richard L. Weston and Drucilla Merida Thompson,* 708 F.2d 302 at 306 (7th Cir.1983). The petitioner must prove that counsel's assistance was so limited as to make "a sham or mockery" of petitioner's trial. *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 638 (1975). Moreover, as a general rule in reviewing an attorney's performance, the Court will examine only those errors not classifiable as mere tactical decisions. *Weston, supra,* at 306. In the instant case, the defense attorney's failure to make the above objections amounted to nothing more than trial strategy which is clearly exempted from review by this Court. Therefore, since defense counsel has provided "representation without serious prejudicial blunders," *Guzzardo v. Bengston,* 643 F.2d 1300, 1305 (7th Cir. 1981), petitioner's claim must fail.

## V.

Finally, petitioner contends that the sentence imposed is excessive and a "great departure from the spirit and purpose of the law." In support of this claim petitioner asserts that the trial judge considered three improper factors in connection with sentencing: 1) he elevated the offenses into the "most heinous" of Class X felonies; 2) he concluded that serious and permanent harm was inflicted upon the victim; and 3) he concluded that the victim was pregnant at the time of the offense. In addition, petitioner asserts that the trial judge failed to take into account petitioner's clear potential for rehabilitation. After carefully examining the nature of the offense, the surrounding circumstances in the case, and the applicable sentencing statute, this Court is of the belief that the sentence imposed by the trial judge was clearly appropriate.

Initially, it must be noted that sentencing is primarily a function of the trial judge who observes the defendant and is in a superior position to evaluate the likelihood of his rehabilitation. Moreover, sentencing involves the trial judge's discretion and should be reversed only where an abuse of discretion is shown to exist.

In the instant case, petitioner elected to be sentenced under the newly enacted deviate sexual assault statute. *See, generally,* Ill.Rev.Stat. ch. 38, § 1005–5–1 (1978). This statute provides for a sentence of not less than six years nor more than thirty years. As indicated by the record, the trial judge sentenced petitioner to a term of twenty years, clearly within the limits set by the legislature. The petitioner, however, contends that the trial judge's consideration of the three factors resulted in an excessive sentence, and therefore, an abuse of his discretion. This Court cannot agree.

Although the trial judge stated that deviate sexual assault and rape are examples of the most heinous of Class X felonies, the Court is unable to conclude that this singular expression of personal belief constitutes an abuse of discretion. The same reasoning applies to petitioner's contention regarding the trial judge's allegedly improper conclusion that Mrs. Ward

could suffer life-long psychological scars. Finally, petitioner claims that the trial judge erroneously considered the testimony regarding Mrs. Ward's pregnancy, as the evidence does not support a finding that she was actually pregnant at the time of the offense. However, as the State Appellate Court held, the trial court could properly consider defendant's belief that the victim was pregnant as part of the nature and circumstances of the offense.

For the foregoing reasons, it is clear that no genuine issue of triable fact exists with respect to petitioner's claims in the instant habeas petition. Therefore, summary judgment is granted to respondents, and the writ of habeas corpus is denied.

IT IS SO ORDERED.